CRAIG v. MERIWETHER.

Opinion delivered November 11, 1907.

1. MORTGAGE—SALE UNDER POWER—APPRAISEMENT.—A sale of mortgaged land under a power contained in the mortgage, without first having the land appraised, as required by Kirby's Digest, § § 5416, 5417, is void. (Page 303.)

2. SAME—WAIVER OF APPRAISEMENT.—An unaccepted offer of a mortgagor to redeem from a sale of land under a power in a mortgage, which is invalid by reason of a failure to comply with the statutory requirement as to appraisement of the land, is not a ratification of the sale, and does not prevent the mortagee from taking steps to procure a sale at which a valid title may be obtained. (Page 304.)

3. SAME—RIGHTS OF MORTGAGOR'S ASSIGNEE.—An assignee of a mortgagor's equity of redemption stands in the same attitude as the mortgagor, as regards the validity of a sale by the mortgagee under a power in the mortgage made without having had the land appraised. (Page 305.)

4. SAME—WAIVER OF LIEN.—A mortgagee may sue at law on the mortgage debt without waiving his mortgage lien. (Page 306.)

5. ELECTION OF REMEDIES—WHEN NOT BINDING.—An election between inconsistent remedies is not binding if made in ignorance of material facts; nor is the knowledge of an agent imputed to his principal, since the doctrine of election is based entirely upon the idea of a conscious exercise of choice between inconsistent remedies. (Page 306.)

Appeal from Chicot Chancery Court; *Emon O. Mahoney,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

On January 2, 1903, Hunter M. Meriwether and his two brothers, John W. and Gilmer Meriwether, sold and conveyed to J. C. Law and J. B. Bunn certain lands in Chicot County,

Arkansas, for the sum and price of $19,200, which was not paid, but was evidenced by five promissory notes executed by Law and Bunn to said grantors. To secure the payment of these notes, Law and Bunn executed to the Meriwethers a mortgage on said lands. The mortgage provided, among other things, that if default should be made in the payment of the notes at maturity, or of any interest payment when due, or of any taxes due on said land, the entire indebtedness should immediately become due and payable at the option of the mortgagees, in which event the mortgagees, their agent or attorney, were authorized to foreclose the mortgage, by a public sale of the lands to the highest bidder for cash. Default was made in the payment of the first installment of interest, due January 1, 1904, and taxes on the land, whereupon the mortgagees immediately declared the whole debt due and executed a written power of attorney to Johnson Chapman to sell the lands, as provided in the mortgage. At a sale of the lands, on the 23d day of May, 1904, they were bid in by the mortgagees for $5,500, and a deed was a few days later executed to them by said Chapman and filed for record. No appraisement of the lands was made, and, as is shown in the agreed statement of facts, the Meriwethers were non-residents of the State, and were not aware that appraisement had not been made, nor that the law of the State required mortgaged property to be appraised before sale. They were not present at the sale, but the lands were bid in for them by another person according to instructions. The deed of Chapman to the Meriwethers is silent as to appraisement of the land.

The Meriwethers credited the notes with the sum bid at the sale of the land, and thereafter on August 5, 1904, brought an action in the circuit court of Ashley County, where Law and Bunn resided, against them to recover the balance on the notes. Afterwards Law and Bunn sold and conveyed their interest in said lands to R. E. Craig and J. C. Norman by deed reciting a consideration of five thousand dollars, and within a year from date of the foreclosure sale by Chapman they (Craig and Norman) tendered to the Meriwethers the sum of $5,500 with costs of sale and ten per cent. interest from date of sale, for the purpose of redeeming the lands from the sale.

Craig and Norman are both attorneys-at-law, and, at the

time of these transactions, Norman was attorney for Law and Bunn in relation thereto, and Craig was general attorney for Law. The Meriwethers declined the tender, and, after being advised by their attorneys in this State that the foreclosure sale was void on account of the failure to have the land appraised before sale, they dismissed their suit at law against Law and Bunn on the notes, and instituted this suit in the chancery court of Chicot County against Law and Bunn to foreclose the mortgage. Craig and Norman were also made defendants upon an allegation in the complaint that they claimed an interest in the land. Law and Bunn filed an answer disclaiming any further interest in the land, and Craig and Norman answered, setting forth the sale by Chapman under the power in the mortgage, the purchase by the Meriwethers at said sale, the conveyance of Law and Bunn to them, and their offer to redeem from the foreclosure sale. They offered to make their tender good by bringing the money into court. On final hearing of the case, the chancellor held that the failure to appraise the lands before the foreclosure sale by Chapman rendered the sale invalid, and that the plaintiffs were entitled to foreclose in equity. A decree was rendered against Law and Bunn for the full amount of the notes, with interest, and a sale of the lands by commissioner to pay the amount of the decree was ordered in accordance with the usual practice in such cases. All the defendants have appealed.

*Murphy, Coleman & Lewis,* for appellant, Norman.

(1) The mortgagors, or their vendees, are entitled to redeem by paying the sale price with ten per cent. interest and costs. Kirby's Digest, § 5416; 57 Ark. 198; 65 *Id.* 392; 84 Ala. 289; 64 *Id.* 576; 65 *Id.* 229; 71 *Id.* 484; 31 *Id.* 429; 29 *Id.* 544; 74 Ala. 285; 11 Am. & Eng. Enc. Law (2 Ed.) 243.

(2) The tender was sufficient. 28 Am. & Eng. Enc. Law (2 Ed.) 7, 38; 52 Ark. 146.

(3) The sale by the trustee discharged the mortgage and extinguished the lien, and left nothing to foreclose in equity. 65 Ark. 132; 63 *Id.* 397; 69 Minn. 469; 72 N. W. 707; 26 Minn. 309; 137 Ill. 453; 60 Iowa, 532; 2 Jones on Mortg. (6 Ed.) § 1876; 106 Ala. 417; 17 So. 623; 66 Ark. 573; 65 *Id.* 129; 47 Mich. 385; 17 Col. 492; 31 Am. St. 328; 81 Ill. 436; 10 Minn. 379.

(4) Plaintiffs are estopped, and can not pursue inconsistent remedies, or disaffirm to the prejudice of another that which they have affirmed. 53 Mich. 146; 71 Ark. 209; 78 Id. 501.

(5) Nor can they take advantage of want of appraisement. 71 Ark. 209; Willsie on Mortg. Forecl. p. 660; 40 Ark. 275; 108 N. C. 456; 24 Miss. 681; 122 Ga. 178-181; 187 Mo. 613; 91 Ala. 334; 64 Minn. 190; 8 Id. 338.

(6) Even though the deed to plaintiffs may have been void, this sale by their agent was valid, and vested in them the equitable title. 71 Ark. 484. But the validity of the deed is immaterial. 57 Ark. 198. A tender prevents the passing of the title.

(7) Where a vendor takes a mortgage upon land sold, he waives the equitable lien. 33 Ark. 63. An express lien is waived by foreclosure. 60 Iowa, 532.

*W. S. McCain,* for appellant, Craig.

1. The waiver of the right to redeem must be construed to refer only to a foreclosure sale under a decree of a court. The statute allows this right to be waived only when the sale is by judicial foreclosure. Kirby's Digest, § 5420; Acts 1879, p. 94; Acts 1883, p. 157; 49 Penn. St. 387; 28 Ark. 491; 36 Id. 55; 2 Freeman on Ex. § 216; 72 Am. Dec. 741 and notes.

2. The right to redeem land is a valuable property right and the subject of alienation. 4 Kent, Com. p. 441; 73 Iowa, 446; 2 Freem. on Ex. § 317; 57 Iowa, 110; 9 Hump. 726; 49 Ark. 551; 82 Iowa, 1.

3. Even though the sale by Chapman was a nullity for want of power and appraisement, plaintiffs can not take advantage of their own wrong. The statute was for the protection of the mortgagors, and they do not complain. 47 Ark. 309; 40 Kan. 224; Freeman on Ex. § 284; 17 La. Ann. 91; 40 Ark. 275; 58 Id. 556; 64 Id. 213. Nor can they occupy inconsistent positions. 50 Ark. 204; 53 Id. 514; 70 Id. 457. See also 102 U. S. 415; 36 Ark. 248; 76 Id. 577; 77 Id. 109; 64 Id. 639.

4. Craig and Norman were innocent purchasers. A redemption from a mortgage foreclosure sale relieves the land from the sale and any further lien. 65 Ark. 392; 1 Jones on Mortg. § 1051c; 2 Freeman on Executions, § 317; 54

Ark. 153; 2 Pom. Eq. 776. On the doctrine of estoppel, see *Ib.* § 804-811; 29 Ark. 223; 37 *Id.* 53; 33 *Id.* 468.

5. No written authority necessary where mortgagee buys at his own or agent's sale. 55 Ark. 272.

*T. M. Hooker, June P. Wooten* and *Baldy Vinson,* for appellees.

1. Where there is no valid appraisement, the sale is absolutely void. 55 Ark. 268; 21 S. W. 469; 70 Ark. 490; *Ib.* 309. An agent can not sell without an instrument of writing of as high dignity as a deed or conveyance. 71 Ark. 486; Kirby's Digest, § § 753, 3666; 55 Ark. 326. Status of mortgagee under void sale unchanged. 55 Ark. 236; 7 L. R. An. 273. If sale void, no estoppel. 69 L. R. An. 143; Bigelow on Estop. 338; 53 Ark. 359; 100 U. S. 564; 125 Mass. 469; 140 *Id.* 63; 25 Minn. 305; S. & W. Trial of Title to Land, § 843; Bisph. on Eq. § § 282, 288-9, 290, etc.; Freeman, Void Judicial Sales, § 48.

2. A deed to third parties from mortgagor, after condition broken and sale under a power, does not carry the right of redemption. Section 5111, Sand. & Hill's Digest; 70 Ala. 58; 54 Ala. 317; 46 Miss. 13; 3 Pick. 492; 2 Met. 29; 17 Ohio, 482. The right of redemption is purely a statutory one; a *privilege* only to the *mortgagor.* 54 Ala. 317; 74 *Id.* 285; 84 *Id.* 298; 132 *Id.* 657; 57 Iowa, 110; 21 Ark. 319; 52 *Id.* 132; 49 *Id.* 551; 43 *Id.* 54; 44 *Id.* 17; 41 *Id.* 436; 112 U. S. 609; 28 L. R. A. 837; 49 Ark. 325; 60 Ala. 243; 70 *Id.* 46; 2 Freeman on Ex. § 317. See also 57 Ark. 201; 66 *Id.* 141; 21 *Id.* 319; 65 *Id.* 129; 43 *Id.* 54; 67 Tex. 542; 123 Mass. 519. The privilege not transferable. 44 Ark. 17; 41 *Id.* 436; 49 *Id.* 325; 112 U. S. 603.

3. The statutory right of redemption may be waived, being only a privilege. 21 Ark. 105; *Ib.* 319; 52 *Id.* 132; 65 *Id.* 129; 47 Minn. 434.

4. There was no legal tender. 53 Minn. 23; 50 N. Y. (5 Sickels), 550. The full amount should have been tendered, without conditions. Hunt on Tender, § § 186, 337; 26 Iowa, 114; 3 Strobh. 25; 83 Mich. 301; 53 Minn. 23; 4 Wis. 329; 33 Me. 67; Jones on Mortgages, § § 896, 958; 65 Ark. 392.

5. He who asks equity must do equity. 116 N. C. 1; 33 L. R. An. 231, 235.

R. E. Craig, pro se, in reply.

Ignorance can not be heard in equity. Plaintiffs estopped, (1) by inconsistent attitude (32 Ark. 345; 36 Id. 96; 35 Id. 376; 1 Am. St. 628, note; 59 Id. 434; Bigelow on Estop. 548) ; (2) by election (15 Cyc. 262-VII; 84 Am. St. 937; 35 Id. 17) ; (3) by estoppel in pais (16 Cyc. 785 B; 9 Am. St. 587; 5 Id. 285; 32 Id. 784).

McCULLOCH, J., (after stating the facts.) Many questions are ably argued by counsel as to the validity of the tender said to have been made to the Meriwethers to redeem from the foreclosure sale, the right of the mortgagors to assign their statutory right or privilege of redemption after sale, whether it is merely a personal privilege and not assignable, and whether or not the mortgagors were bound by the clause in the mortgage waiving their statutory right of redemption after sale; but the conclusion which we have reached renders it unnecessary for us to discuss these questions. The case is disposed of on other grounds.

The statute governing the foreclosure of mortgages declares that "at all sales of personal and real property under mortgages and deeds of trust in this State, such property shall not sell for less than two-thirds of the appraised value thereof. Provided, if the property shall not sell at first offering for two-thirds of the amount of the appraisement, then, * * * in case of real property, another offering may be made in twelve months thereafter, at which offering the sale shall be to the highest bidder without reference to the appraisement." Kirby's Digest, § 5416.

The statute also prescribes that "when such sales are to be made, the mortgagee, trustee or other person authorized to make the same shall, before the day fixed therefor, apply to some justice of the peace in the county in which the property is held or situated for the appointment of appraisers." Kirby's Digest, § 5417.

These provisions of the statute were not complied with. No attempt was made to comply with them.

It has been said by this court that "the right to foreclose a mortgage at private sale is derived from the power conferred by the mortgage, and, independently of it, does not exist. The

instrument creating such a power determines its extent, as well as the manner and conditions of the exercise; and those relying upon such a sale must show that it was made in obedience to this power." *Stallings* v. *Thomas,* 55 Ark. 326.

To this statement of the law may be added that when foreclosure sales of land under mortgages pursuant to power therein conferred are regulated by statute, a sale not in conformity with the statute is invalid, and will not cut off the equity of redemption. Kerr's Supp. to Wiltsie on Mort. For. p. 1181; *Pierce* v. *Grimley,* 77 Mich. 273.

In *Ellenbogen* v. *Griffey,* 55 Ark. 268, and in *Kelley* v. *Graham,* 70 Ark. 490, this court held that a failure to comply with this statute with reference to foreclosure sales of land under mortgages rendered the sale void. In those cases the mortgagors were seeking to avoid the sale.

The statute imposes conditions upon the exercise of the power of sale contained in a mortgage of deed of trust, viz., that the property shall first be appraised, and that at the sale it shall bring two-thirds of the appraised values. It impliedly commands the mortgagee or trustee not to proceed with the sale until these conditions are performed, and no valid sale can be made until they are performed. The statute regulating probate sales of land contains substantially the same provisions, and this court has held that the omission to comply with the statute can not be taken advantage of after confirmation by the court—that the confirmation cures all such defects, (*Bell* v. *Green,* 38 Ark. 78) ; but that rule can not be applied to violations of the statute regulating proceedings *in pais* for foreclosure of mortgages. As we have already said, that statute must be complied with; else the sale is invalid.

It is urged by counsel for appellants that the provisions of the statute are solely for the benefit of the mortgagors, that they may waive compliance with its provisions, and that the mortgagors in this instance, by offering to redeem from the sale, did waive the omission and ratify the sale. Counsel cite *Dailey* v. *Abbott,* 40 Ark. 276, as sustaining their contention. That case does not, however, decide any such thing. It involved an effort on the part of the mortgagor to redeem from a sale under mortgage by paying the amount of the debt secured

and to charge the purchaser with rents and waste. The complaint alleged that the sale was made without appraisement, but the question of the validity of the sale was not important, inasmuch as the purchase price exceeded the amount of the debt secured. The controversy arose solely over the amount of rents and profits and damages for waste.

We express no opinion on the question whether or not the mortgagor can in any manner before the sale waive the provisions of the statute and authorize a sale to the highest bidder without appraisement. That is not the case before us, and we need not decide it. What we have to consider is whether or not an unaccepted offer of a mortgagor to redeem from a sale which is invalid by reason of failure to comply with the statutory provision concerning appraisement ratifies and validates the sale and prevents the mortgagee from taking steps to procure a sale at which a valid title may be obtained.

We hold that a sale under the power in the mortgage without complying with the statute is invalid, that no title can be vested thereunder, and that the mortgagee, when the defect in the sale is discovered, can have another sale made, either under the power or by suit in equity. As the sale in violation of this statute did not vest the title in the purchaser, the offer to redeem gave no vitality to the sale. The title either did or did not pass by the sale. If it did not pass by the sale, certainly the offer to redeem, which was an attempt to defeat, not to confirm, the title of the purchaser, did not validate the sale. An unaccepted offer to redeem from the invalid sale did not change the rights of the parties in any respect, and left the mortgagors free to take advantage of the invalidity of the sale. And, until there had been a valid exercise of the power of sale, the power was not exhausted and could be exercised.

But it is said that, even if this be true as to Law and Bunn, appellees are, by their conduct in procuring a defective sale and purchasing the property thereat, estopped as against Craig and Norman to assert the invalidity of the sale and to seek another foreclosure.

Craig and Norman stand in no better attitude in the controversy than Law and Bunn. The mortgage executed by Law and Bunn and the deed made by Chapman to appellees were

both on record, and Craig and Norman had actual as well as constructive knowledge of them. They were therefore chargeable with full notice of all the rights of the mortgagees, and purchased only such interest and rights as Law and Bunn had. They can claim no greater rights than Law and Bunn had.

Nor were appellees estopped, on account of having instituted a suit at law against Law and Bunn, to seek a foreclosure in equity. That was not assuming an inconsistent position. They had the right to sue at law on the notes, without waiving their mortgage lien. *Whitmore* v. *Tatum*, 54 Ark. 457; *Rice* v. *Wilburn*, 31 Ark. 108. It is only where one of two or more inconsistent remedies are pursued that the election to pursue the one is an abandonment of the other.

Besides, when appellees instituted the suit at law, they did so in ignorance of a material fact concerning the matter, viz.: that there had been no appraisement of the land. They were not bound by any election made in ignorance of material facts. *White* v. *Beal & Fletcher Gro. Co.*, 65 Ark. 278; *Dudley E. Jones Co.* v. *Daniel*, 67 Ark. 206.

It is true that Chapman and the person whom he requested to bid the land for appellees were agents of appellees, and knew that there had been no appraisement; and appellees were charged with constructive knowledge of information concerning the subject-matter which came to these agents while in the performance of their respective duties. But the agency of these parties came to an end with the sale and execution of the deed. They had nothing to do with the bringing of the action, and appellees were not, by reason of constructive knowledge of material facts received through these agents, bound by any election made in actual ignorance of those facts. The binding force of an election can not be predicated upon mere imputed knowledge, for the doctrine is based entirely upon the idea of a conscious exercise of choice between two remedies which are inconsistent with each other.

Lord Chelmsford, speaking for the House of Lords in *Spread* v. *Morgan*, 11 H. L. Cas. 588, said:

"In order that a person who is put to his election should be concluded by it, two things are necessary: First, a full knowledge of the nature of the inconsistent rights, and of the

necessity of electing between them. Second, an intention to elect, manifested either expressly or by acts which imply choice and acquiescence."

We think there is nothing in the opinion in *Baker* v. *Brown Shoe Co.*, 78 Ark. 501 (relied on by counsel), which bears out the contention that an election of remedies can be based on imputed knowledge of material facts.

We are of the opinion that the decree of the chancellor is correct, and the same is affirmed.